**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ARTHUR BURNHAM, | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | NO. 18-40050-TSH |
| v. | ) | |
| | ) | |
| WYETH LABORATORIES INC., | ) | |
| UNIVERSITY OF MASSACHUSETTS | ) | |
| MEDICAL CENTER; DR. NAWRAS | ) | |
| SHUKAIR, UNIVERSITY OF | ) | |
| MASSACHUETTS MEDICAL CENTER | ) | |
| PATIENT RECOVERY CENTER | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT WYETH PHARMACEUTICALS LLC'S MOTION TO DISMISS**
**(Docket No. 29)**

**December 14, 2018**

**HILLMAN, D.J.**

Arthur Burnham ("Plaintiff") brings a variety of claims against several Defendants. Relevant for the purposes of this motion, he brings a claim for product liability against Wyeth Pharmaceuticals LLC (erroneously identified as "Wyeth Laboratories Inc.") ("Defendant Wyeth"). Defendant Wyeth filed a motion to dismiss for failure to state a claim upon which relief can be granted (Docket No. 29). For the reasons below, Defendant Wyeth's motion is ***granted***.

**Background**

The following facts are taken from Plaintiff's complaint and assumed to be true at this stage of the litigation. (Docket No. 1).

On March 7, 2012, Plaintiff suffered a seizure while in custody of the Southbridge Police Department and became incontinent. Plaintiff claims that Southbridge Police disseminated a video of the incident, which mocked Plaintiff. Subsequently, Plaintiff developed "major depressive disorder and suicide [sic] ideation with multiple self-mutilations." *Id.* ¶ 9.

On June 14, 2015, Plaintiff voluntarily presented himself to the University of Massachusetts's Emergency Room. He reported having a "suicidal crisis" and contemplating "suicide by cop." *Id.* ¶ 15. Plaintiff notes that he was rated as "severe" on a crisis rating scale and therefore required hospitalization.

On June 16, 2015, Plaintiff alleges that Dr. Shukair prescribed him Effexor "without being warned or even explained [sic] what type of medication it was other then [sic] it was an aint-depressant [sic]." *Id.* ¶ 22. Later that day, Plaintiff experienced "shaking" chest muscles, elevated heart rate, confusion, and became "highly upset." *Id.* ¶ 25. Plaintiff subsequently requested to be discharged and pushed through several hospital employees to leave. Metro Crime Prevention, who had arrived due to Plaintiff's aggressive behavior, told Plaintiff they were "not going to fight" him and said, "if you want to leave just leave." *Id.* ¶¶ 29, 88.

After Plaintiff left the hospital, he experienced suicidal ideation because he "was so agitated at police over the video and mistreatment." *Id.* ¶ 30. He then went to the police station, doused a police car with gasoline, and lit the car on fire. He was subsequently arrested and sent to Bridgewater State Hospital for psychiatric treatment.

Plaintiff filed this lawsuit bringing, among several other claims, a product liability claim for defective Effexor against its manufacturer, Defendant Wyeth.

### Standard

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule

12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

Because Plaintiff appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, Plaintiff's pro-se status does not excuse him from complying with procedural and substantive law. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

## Discussion

A plaintiff in a product liability case must demonstrate "(1) the defendant produced or sold a defective product and (2) the product caused the plaintiff's injury." *Fertik v. William Stevenson,*

*M.D.*, 186 F. Supp. 3d, 101-02 (D. Mass 2016).  In order for a product to be deemed defective, a plaintiff must demonstrate "a manufacturing defect, a design defect, or a warning defect, that is, a failure reasonably to warn of the product's foreseeable risks of harm." *Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 422, 990 N.E.2d 997 (2013).

In order to establish a manufacturing defect, a plaintiff must demonstrate that there is a "deviation from the design [that] rendered the product unreasonably dangerous and therefore unfit for its ordinary purposes." *Back v. Wickes Corp.*, 375 Mass. 633, 641, 378 N.E.2d 964 (1978). Here, Plaintiff has made no allegations to suggest that the medication he ingested deviated from the drug's intended design.

A design defect claim is not cognizable when the product at issue is a prescription medication.  The Second Restatement of Torts notes:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use.  These are especially common in the field of drugs . . . .  Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous . . . .

Restatement (Second) of Torts § 402A cmt. k (1965).  Massachusetts courts have consistently followed the Restatement's guidance. *See, e.g.*, *Vassallo v. Baxter Healthcare Corp.*, 428 Mass. 1,22,696 N.E.2d 909 (1998) (noting that "liability under the implied warranty of merchantability in Massachusetts is congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A." (citation and quotation marks omitted)); *see also Payton v. Abbott Labs*, 386 Mass. 540, 573, 437 N.E.2d 171 (1982) (citing comment k as consistent with public policy); *cf. Lareau v. Page*, 840 F. Supp. 920, 933 (D. Mass 1993) ("[T]here are some products, especially drugs, which are quite incapable of being made safe for their intended and ordinary use, and yet the marketing and use of which is justified because they may avert an otherwise inevitable

death. Such a drug, properly prepared, and accompanied by proper directions and warnings, is not defective, nor is it unreasonably dangerous."). Consequently, Plaintiff may not claim that Defendant Wyeth's product was defective in its design.

Finally, under the learned intermediary doctrine, "a prescription drug manufacturer's duty to warn of dangers associated with its product runs only to the physician; it is the physician's duty to warn the ultimate consumer." *Cottam v. CVS Pharmacy*, 436 Mass. 316, 321, 764 N.E.2d 814 (2002) (citation omitted). Plaintiff makes no allegations that Defendant Wyeth failed to provide adequate warnings to Dr. Shukair regarding the potential side effects of Effexor. In fact, Plaintiff's allegations seem to suggest that the manufacturer did provide the necessary warnings. Plaintiff notes that the medication was accompanied by a "BLACK BOX WARNING" advising Dr. Shukair of the side effects Plaintiff allegedly experienced. (Docket No. 1 ¶ 53). According to Plaintiff, however, "Dr. shukair [sic] ignored" this "obvious risk." *Id.* Further, Plaintiff notes that he was prescribed the medication "without being warned or even explained what type of medication it was other then [sic] it was an aint-depressant [sic]." *Id.* ¶ 22. Accordingly, Plaintiff's claim seems to be that Dr. Shukair failed to provide him with an adequate warning of potential side effects. According to Massachusetts law, however, these allegations cannot support a failure to warn claim against Defendant Wyeth.

## Conclusion

For the reasons stated above, Defendant Wyeth's motion to dismiss (Docket No. 29) is *__granted__*.

**SO ORDERED.**

                                            */s/ Timothy S. Hillman*
                                            **TIMOTHY S. HILLMAN**
                                            **DISTRICT JUDGE**