**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ARTHUR BURNHAM,** | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| | ) | **NO. 18-40050-TSH** |
| | ) | |
| v. | ) | |
| | ) | |
| **WYETH LABORATORIES INC.,** | ) | |
| **UNIVERSITY OF MASSACHUSETTS** | ) | |
| **MEDICAL CENTER; DR. NAWRAS** | ) | |
| **SHUKAIR, UNIVERSITY OF** | ) | |
| **MASSACHUETTS MEDICAL CENTER** | ) | |
| **PATIENT RECOVERY CENTER** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT METRO CRIME PREVENTION'S MOTION TO DISMISS**
**(Docket No. 21)**

**December 21, 2018**

**HILLMAN, D.J.**

Arthur Burnham ("Plaintiff") brings a variety of claims against several Defendants. Relevant for the purposes of this motion, he brings a claim under 42 U.S.C. § 1983 against Metro Crime Prevention (erroneously identified as University of Massachusetts Medical Center Patient Recovery Center Security) ("Defendant Metro"). Defendant Metro filed a motion to dismiss for failure to state a claim upon which relief can be granted. (Docket No. 21). For the reasons stated below, Defendant's motion is ***denied***.

**Background**

The following facts are taken from Plaintiff's complaint (Docket No. 1) and the documents attached to the complaint and are assumed to be true at this stage of the litigation. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 68 (1st Cir. 2014) (To set the factual stage for this case, we rely on the allegation set forth in [the plaintiff's] complaint, the documents attached to the complaint, and relevant public records.").

On March 7, 2012, Plaintiff suffered a seizure while in custody of the Southbridge Police Department and became incontinent. Plaintiff claims that Southbridge Police disseminated a video of the incident, and public employees mocked Plaintiff. Subsequently, Plaintiff developed "major depressive disorder and suicide [sic] ideation with multiple self-mutilations." *Id.* ¶ 9.

On June 14, 2015, Plaintiff voluntarily presented himself to the University of Massachusetts's Emergency Room. He reported having a "suicidal crisis" and contemplating "suicide by cop." *Id.* ¶ 15. Plaintiff notes that he was rated as "severe" on a crisis rating scale and therefore required hospitalization.

On June 16, 2015, Plaintiff alleges that Dr. Shukair prescribed him Effexor "without being warned or even explained [sic] what type of medication it was other then [sic] it was an aint-depressant [sic]." *Id.* ¶ 22. Later that day, Plaintiff experienced "shaking" chest muscles, elevated heart rate, confusion, and became "highly upset." *Id.* ¶ 25. Plaintiff subsequently requested to be discharged and pushed through several hospital employees to leave. Defendant Metro, who had arrived due to Plaintiff's aggressive behavior, told Plaintiff they were "not going to fight" him and said, "if you want to leave just leave." *Id.* ¶¶ 29, 88.

After Plaintiff left the hospital, he experienced suicidal ideation because he "was so agitated at police over the video and mistreatment." *Id.* ¶ 30. He then went to the police station,

doused a police car with gasoline, and lit the car on fire. He was subsequently arrested and sent to Bridgewater State Hospital for psychiatric treatment.

Plaintiff filed this lawsuit bringing, among several other claims, a claim under 42 U.S.C. § 1983 against Defendant Metro for negligently allowing him to leave the hospital resulting in a deprivation of his Constitutional right to basic human needs.

## **Standard**

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the

other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

Because Plaintiff appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, Plaintiff's pro-se status does not excuse him from complying with procedural and substantive law. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

## Discussion

Although it is often difficult to understand Plaintiff's complaint, it appears that he argues that Defendant Metro's failure to restrain him violated his constitutional rights to "shelter, medical care, and reasonable safety for a patient totally dependent on" the Commonwealth. (Docket No. 1 ¶ 65).

Plaintiff claims that he was admitted to University of Massachusetts Memorial Medical Center pursuant to Mass. Gen. Laws c. 123, § 12. Defendant notes that the law states, in relevant part: "At any time during such period of hospitalization, the superintendent may discharge such person if he determines that such person is not in need of care and treatment." Mass. Gen. Laws c. 123, § 12(c). Defendant Metro's entire argument for why Plaintiff's claim should be dismissed is that "Plaintiff states that Dr. Shukair, his treating and admitting physician, determined that Plaintiff could be released from the hospital." (Docket No. 22, at 3-4). According to Defendant Metro, "Dr. Shukair's decision to voluntarily discharge Plaintiff, whether correct or not, unequivocally terminated [Defendant Metro's] obligations, if any, to restrain and prohibit Plaintiff from leaving." *Id.* at 4.

Defendant argues that paragraphs 74 and 79 of Plaintiff's complaint demonstrate that Plaintiff was discharged. It is not entirely clear from those paragraphs, however, that Dr. Shukair

in fact discharged Plaintiff.  Plaintiff argues that Dr. Shukair "caus[ed] a discontinuation of access to programs" (Docket No. 1 ¶ 74) and "declined to confirm the need for a continuation of treatment." *Id.* ¶ 79.  Further, the medical records attached to and incorporated in Plaintiff's complaint belie Defendant Metro's argument.  According to Nurse Grzyb, Dr. Botsaris discharged Plaintiff approximately one hour *after* Plaintiff escaped from the hospital. (Docket 1-1, at 18).[1]

## Conclusion

For the reasons stated above, Defendant Metro's motion to dismiss (Docket No. 21) is *denied*.

**SO ORDERED.**

>            */s/ Timothy S. Hillman*
>            **TIMOTHY S. HILLMAN**
>            **DISTRICT JUDGE**

---

[1] There are likely strong arguments for dismissal in this case, but Defendant Metro has not made them. The Court is not clairvoyant and will not do counsel's work. *See Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders.").